UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DENNIS T. MICHAUD, JR.,<br><br>Defendant | CRIMINAL No. 1:25-CR-10145-RGS |

### GOVERNMENT'S SENTENCING MEMORANDUM

For months, Defendant Dennis Michaud, Jr., sold high-powered firearms with absolute indifference to who his customers were, how those firearms would be used, and the bodily harm the firearms he was selling could cause in Massachusetts and in his own New Hampshire community. Text messages and high-quality footage show that Michaud sold those firearms with full knowledge that his conduct was unlawful and with a prophetic understanding that the criminal consequences for dealing in these kinds of firearms would be significant. For his conduct, Michaud was indicted on one count of trafficking in firearms, in violation of 18 U.S.C. § 933(a)(1). ECF No. 15. On January 27, 2026, Michaud pleaded guilty to that count. ECF No. 36. The Pre-Sentence Investigation Report ("PSR") correctly calculates the applicable Guidelines Sentencing Range ("GSR") to be 78 months to 97 months. PSR ¶ 94. As detailed in this memorandum, the government recommends a sentence of 78 months. The recommended sentence appropriately reflects the nature of the offense and Michaud's history and characteristics and provides an adequate deterrent to further criminal conduct. Accordingly, the recommended sentence is sufficient but not greater than necessary to meet the goals of sentencing and the Court should impose it. *See* 18 U.S.C. § 3553(a).

## I. **Factual Background**

Between February 11, 2025, and March 20, 2025, Michaud advertised numerous firearms to a confidential informant (the "CI") on Instagram. PSR ¶ 7. Over the course of four controlled purchases, Michaud ultimately sold 9 high-powered firearms, various firearm accessories, and ammunition to the CI. PSR ¶¶ 9, 14, 17, 21. Michaud brought the firearms from New Hampshire and sold them in Massachusetts. PSR ¶¶ 8, 14, 17, 21. At the time of the sales, Michaud was a prohibited person because he had been convicted of possession of marijuana in 2023. PSR ¶ 23.

Michaud sold these firearms to the CI even after the CI told Michaud that the CI intended to sell them, unlawfully, in Massachusetts. PSR ¶ 10. Some of the ammunition Michaud sold to the CI was described by Michaud as "the third most powerful round for a handgun in the world." PSR ¶ 15. Michaud told the CI that the user of this powerful ammunition could end up "crack[ing] their own head." PSR ¶ 15.

During the third controlled purchase, Michaud sold two firearms to the CI, one of which was a short barreled rifle (or "SBR") with a high-capacity magazine. PSR ¶ 17. When he sold this rifle to the CI, Michaud knew that selling the short barreled rifle came with significant criminal exposure. Specifically, during the transaction, Defendant told the CI,

> "Let me tell you some legality terms. . . . So, the way it's built right now, it's considered an SBR. Now, if you get caught with this, you're gonna have the charge from owning this in Massachusetts, the charge from it having a stock on it, which is an SBR, and then you have a 30-round mag. So, you'll have three felonies if you get caught with this one." PSR ¶ 18.

During this same transaction, Michaud then disclosed to the CI that Michaud's "friend[] shot someone in the leg . . . on purpose" and that police "could investigate" Michaud for that shooting based on the text messages on his friend's phone. PSR ¶ 19. At the end of the transaction,

Michaud offered to sell more firearms to the CI, including firearms that Michaud's friends had up for sale.  PSR ¶ 20.

The day that Michaud was arrested, investigators executed a federal search warrant at Michaud's family residence in New Hampshire.  PSR ¶ 23.  At the time, Michaud lived with his parents and his younger siblings, who were four and thirteen years old.  PSR ¶ 23.  Inside Michaud's bedroom, investigators found 28 firearms, assorted ammunition of various calibers, handwritten contracts for the sale and purchase of firearms.  Exhibit 1 to this memorandum depicts some of these items.  Although Michaud has had only short-term and intermittent lawful employment, PSR ¶ 84, investigators also found over $70,000 in cash, accompanied by a money counter, various forms of suspected narcotics, packaging for narcotics, among other items.  PSR ¶ 23.  Michaud's bedroom had no lock.  PSR ¶ 23.

## II.    **Calculation of Defendant's GSR**

The government agrees with Probation that Michaud's GSR is 78 months to 97 months.

### a.    Defendant's Total Offense Level is 28

The government agrees that the base offense level is 20 because (i) the offense involved a firearm that is described in 26 U.S.C. § 5845(a)(3)—a rifle having a barrel of less than 16 inches in length, PSR ¶ 18, and (ii) the defendant both (I) was a prohibited person at the time of the offense, PSR ¶ 23; and (II) was convicted under 18 U.S.C. § 933.  *See* USSG § 2K2.1(a)(4)(B).

The government further agrees that Defendant's offense level is increased by 6 because the offense involved at least 25 firearms, but less than 99 firearms.  *See* USSG §2K2.1(b)(1)(C). Defendant sold 9 firearms to the CI.  PSR ¶¶ 9, 14, 17, 21.  Exhibit 2 to this memorandum shows Defendant's Instagram messages to the CI, in which Defendant offered at least 22 additional firearms for sale.  Ex. 1; *see* PSR ¶ 7.  Inside Defendant's bedroom, investigators found 28 firearms (which potentially included some of the 22 firearms Defendant advertised on Instagram).  PSR

¶ 23. As to the firearms Defendant had already sold by the time he met the CI, Defendant told the CI, "I've sold a lot" of ghost guns. PSR ¶ 12.

Defendant's offense level is further increased by 5 because Defendant sold two or more firearms knowing or having reason to believe his conduct would result in the receipt of the firearm by an individual who intended to use or dispose of the firearm or ammunition unlawfully. USSG §2K2.1(b)(5)(C)(i)(III). The CI told Defendant that the CI intended to sell the firearms the CI purchased from Defendant. PSR ¶¶ 10, 15. The CI also told Defendant that doing so is "not legal" in Massachusetts, to which Defendant responded, "No, I know." PSR ¶ 10. Accordingly, Defendant sold 9 firearms to the CI, knowing that the CI intended to dispose of them unlawfully.

Finally, Defendant's offense level is decreased by 3 because he has accepted responsibility for the offense charged, USSG §3E1.1(a) & (b), for a Total Offense Level of 28.

### b. Defendant's Criminal History Category ("CHC") is I

The government agrees that Defendant scores one criminal history point for his 2023 marijuana possession conviction, for a CHC of I. *See* PSR ¶ 42, 44.

### III. Sentencing Recommendation

The government recommends a sentence of 78 months' imprisonment.

This sentence appropriately reflects the seriousness of the offense and protects the public from further crimes by Michaud. Specifically, Michaud's conduct endangered the lives of people in Massachusetts because he circumvented gun regulations that prevent gun violence and put deathly weapons in the hands of complete strangers without any regard for his clients' *express* criminal intent. In 2023, 46,728 people died from firearms in the United States.[1] That year,

---

[1] Johns Hopkins Bloomberg School of Public Health, "Annual Gun Violence Data 2023," https://publichealth.jhu.edu/center-for-gun-violence-solutions/data/annual-gun-violence-data (last accessed June 3, 2026).

firearms were used in 79 percent of all homicides in the country.[2]  Michaud knew full well the dangers of firearms:  his friend shot another man "on purpose" and he warned the CI about the potential dangers to the users of certain ammunition Michaud was selling.

The recommended sentence also affords adequate deterrence to criminal conduct by Michaud.  It is clear that the income Michaud derived from his firearms trafficking has been his only meaningful source of income as an adult.  Michaud reported to Probation his entire employment history since he was 17.  He told Probation that he worked at Market Basket, UPS, Marriott, and "off-and-on" at DoorDash and Uber.  PSR ¶ 84.  But he worked at UPS for only one month in 2020 around the time he turned 18.  Ex. 4 (UPS Records).  He left Market Basket in June 2021, when he was 19.  Ex. 3 (Market Basket Records).  DoorDash reported only two payments total—one in 2023 for $42.11 and one in 2024 for $12.25.  Ex. 5 (DoorDash Records).  Marriott Hotel did not have employment information for Michaud.[3]  Notwithstanding his sparse employment, Michaud had over $70,000 cash in his bedroom and has also reported owning $4,000 in bitcoin and a track of land in the Dominican Republic.  *See* PSR ¶ 87.

The government notes significant discrepancies between Michaud's initial financial disclosures, reported in the Pretrial Services Report, which issued on March 25, 2025, and the PSR.  In March 2025, Michaud reported owning $62,000 in bitcoin, as well as two savings accounts worth $7,800, two checking accounts worth $800, and earrings worth $3,000.

In any event, the number of weapons Michaud was selling, the casual nature with which he discussed high-powered firearms and gun violence, his financial information and thin employment history, and his detailed knowledge of Massachusetts gun laws show that,

---

[2] *Id.*
[3] Uber has not responded to the government's subpoena.

notwithstanding his age, Michaud has been in this unlawful business for years, likely his entire adult life. They show that Michaud had lawful employment options but chose the easy, fast money. They show that the offense was not a mistake or a lapse in judgment, but rather a snapshot of the life Michaud has chosen to live. And he made that choice with full understanding, certainly a much more complete and nuanced understanding than other defendants, that he would be facing significant criminal penalties.

## CONCLUSION

The recommended sentence is a within-guidelines sentence that appropriately reflects the seriousness of the offense, protects the public from further crimes by the defendant, and adequately deters the defendant from offending in the future. It is sufficient but not greater than necessary to meet the goals of sentencing. Accordingly, the Court should sentence the defendant to 78 months in prison.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Sandra Gonzalez Sanchez*
Sandra Gonzalez Sanchez
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Sandra Gonzalez Sanchez*
Sandra Gonzalez Sanchez
Assistant United States Attorney

Date: June 4, 2026